The Attorney General is in receipt of your request for an opinion wherein you ask, in effect, the following question: Can a "one bank holding company" contract to guarantee on behalf of its state bank subsidiary a minimum rate of return on funds placed with the bank from a retirement plan for the benefit of a public trust's employees? Generally speaking, no state bank may guarantee to any depositor a rate of interest or return on funds deposited with the bank in excess of those specified by statute. No bank is ever permitted to pay, directly or indirectly, any interest on demand deposits. 6 O.S. 804 [6-804] (1971). All other interest rates paid by banks holding a state charter "shall not exceed nor be less than the maximum rate allowed to national banks by the Board of Governors of the Federal Reserve System." 6 O.S. 203 [6-203](9) (1971). Furthermore, no bank may ever engage in a course of conduct the result of which is to pledge bank assets to any depositor of whatever type, as a mechanism to guarantee the rate of return or interest to be received from the deposits. 6 O.S. 809 [6-809] (1971). Your question asks whether a bank holding company, which is not itself a chartered state bank, may enter into some form of contract which will constitute a guarantee of rate of return to a depositor with its state bank subsidiary. There are several reasons why the Attorney General does not feel that such a practice would be lawful. First, a guarantee as contemplated by your question on the part of a bank holding company on behalf of its state bank subsidiary would be an attempt to accomplish by indirection that which the state bank may not do directly. 6 O.S. 809 [6-809] (1971). Second, a guaranty contract between the bank holding company and the depositor would by operation of law subrogate the bank holding company to the rights of the depositor, if any, in the event that the rate of return is not realized. In the event of default on the part of the state bank's subsidiary, the bank holding company would be a creditor of the state bank with a creditor class status superior to that the bank holding company would enjoy were it merely a stockholder of the bank. As a creditor of the state bank pursuant to a guaranty contract to which the bank holding company is subrogated, the bank holding company would in the event of insolvency be in a substantially superior position than it would otherwise enjoy. This elevation of preference from one class to another would be an indirect form of pledging assets as prohibited by 6 O.S. 809 [6-809]. Finally, and perhaps most importantly, bank holding companies are closely regulated by the federal government pursuant to the Bank Holding Company Act of 1956, 12 U.S.C.A. 1841, et. seq. A "bank holding company" is defined in 1841(a)(1) as "any company which has control over any bank or over any company that is or becomes a bank holding company." Likewise, 1841(c) defines a "bank" as "any institution organized under the laws of the United States, any State of the United States . . . which (1) accepts deposits that the depositor has a legal right to withdraw and demand, and (2) engages in the business of making commercial loans." Emphasis added A bank holding company may only engage in activities which are a "proper incident to banking or managing or controlling banks."12 U.S.C.A. 1843. The test employed to determine whether or not a particular activity of a bank holding company is a proper incident to banking or managing or controlling banks is set forth in 12 U.S.C.A. 1843(c) (8), which states in pertinent part: "In determining whether a particular activity is a proper incident to banking or managing or controlling banks the Board shall consider whether its performance by an affiliate of a holding company can reasonably be expected to produce benefits to the public, such as greater convenience, increased competition, or gains in efficiency, that outweigh possible adverse effects, such as undue concentration of resources, decreased or unfair competition, conflicts of interest, or unsound banking practices." Emphasis added From the foregoing it can be fairly stated that any activity which is unlawful on the part of the subsidiary state bank would, by operation of law, constitute an "unsound banking practice" were it performed by the bank holding company. It is, therefore, the opinion of the Attorney General that a bank holding company may not guarantee a rate of return or interest on funds deposited with its state bank subsidiary as the doing of such an act would be unlawful for the state bank subsidiary under 6 O.S. 809 [6-809] (1971), and the doing of the same act by the bank holding company would constitute an unsound banking practice under12 U.S.C.A. 1843(c) (8). (JOHN F. PERCIVAL) (ksg)